**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **RODNEY MCCLURE, <u>et al.</u>,** | : | |
| **Plaintiffs** | : | **No. 1:21-cv-00334** |
| | : | |
| **v.** | : | **(Judge Kane)** |
| | : | |
| **LOVE'S TRAVEL STOPS &** | : | |
| **COUNTRY STORES, d/b/a LOVE'S,** | : | |
| **Defendant** | : | |

## <u>MEMORANDUM</u>

In the above-captioned action, Plaintiff Rodney McClure ("Plaintiff McClure") asserts a negligence claim against Defendant Love's Travel Stops & Country Stores, Inc., d/b/a Love's ("Defendant" or "Love's") stemming from a slip and fall accident on October 18, 2019.  (Doc. No. 1-2.)  Plaintiff McClure's spouse, Dorothy Swint ("Plaintiff Swint," and, with Plaintiff McClure, "Plaintiffs") also asserts a derivative claim of loss of consortium against Defendant. (<u>Id.</u>)  Before the Court is Defendant's motion for summary judgment.  (Doc. No. 25.)  For the reasons that follow, the Court will grant Defendant's motion.

I.     **BACKGROUND**[1]

On October 18, 2019, Plaintiff McClure pulled his tractor trailer into the parking lot of the Love's store located in Middletown, Pennsylvania, to purchase fuel and food.  (Doc. No. 26 ¶ 1; Doc. No. 31 ¶ 1.)  Plaintiff McClure testified in his deposition that it was not raining.  (Doc. No. 26 ¶ 2; Doc. No. 31 ¶ 2.)  Plaintiff McClure entered and exited Love's without any problem before the accident.  (Doc. No. 26 ¶ 3; Doc. No. 31 ¶ 3.)  Plaintiff McClure did not see any type of liquid on the ground where he fell while entering and exiting the store before the accident. (Doc. No. 26 ¶ 4; Doc. No. 31 ¶ 4.)

After fueling his tractor trailer, Plaintiff McClure retrieved an empty cup from his truck and returned to the store.  (Doc. No. 26 ¶ 5; Doc. No. 31 ¶ 5.)  Using the same entrance that he had previously used to enter and exit the store, Plaintiff McClure entered the store and fell. (Doc. No. 26 ¶ 6; Doc. No. 31 ¶ 6.)  Defendant asserts that Plaintiff McClure testified that he did not know what caused him to fall.  (Doc. No. 26 ¶¶ 7-8.)  Plaintiff McClure clarifies that he only does not know the identity of the particular <u>substance</u> that caused him to fall, and maintains that Jeffrey Rovenolt, Love's Operations Manager, wiped a black, foreign substance from the ground

---

[1] The following relevant facts of record are taken from Defendant's Statement of Material Facts In Support of Its Motion for Summary Judgment (Doc. No. 26) and Plaintiffs' Answer to Defendant's Statement of Material Facts (Doc. No. 31), and are undisputed unless otherwise noted.  The parties' statements of material facts contain specific citations to the record at each numbered paragraph.  (Doc. Nos. 26, 31.)  This record does not include the additional facts filed by Plaintiffs to supplement their answer to Defendant's statement of material facts.  (Doc. No. 31 ¶¶ 22-31.)  Indeed, under Local Rule 56.1, a party opposing a motion for summary judgment may only file a statement of facts "responding to the numbered paragraphs set forth" in the moving party's statement of facts.  It does not, however, "permit a non-moving party to file an additional statement of material facts that does not respond to the movant's statement."  <u>See</u> <u>Romero v. Tobyhanna Twp.</u>, No. 3:19-cv-01038, 2021 WL 4037837, at *2 (M.D. Pa. Sept. 3, 2021) (collecting cases).  Therefore, the Court will disregard Plaintiffs' additional facts in connection with its consideration of Defendant's motion and consider only their numbered responses to Defendant's statement of facts, in accordance with Local Rule 56.1.

near the store's diesel entrance, away from where he fell.[2]  (Doc. No. 31 ¶¶ 7-8.)

After Plaintiff McClure fell, he felt the floor with his hands but does not recall seeing anything in the area where he fell.  (Doc. No. 26 ¶ 9; Doc. No. 31 ¶ 9.)  After falling, Plaintiff McClure also pointed to the entryway he used to enter Love's, although he cannot explain why he pointed there.  (Doc. No. 26 ¶ 10; Doc. No. 31 ¶ 10.)  Plaintiff McClure testified that he went to the bathroom after he fell, and that upon returning to the location of his fall, did not recall seeing anything there.  (Doc. No. 26 ¶ 11; Doc. No. 31 ¶ 11.)  Mr. Rovenolt testified that he examined the area where Plaintiff McClure fell and found that the floor was not slippery in this location.  (Doc. No. 26 ¶ 12; Doc. No. 31 ¶ 12.)

Mr. Rovenolt testified that he did not clean up a black substance off the floor.  (Doc. No. 26 ¶ 13; Doc. No. 31 ¶ 13.)  By contrast, Plaintiff McClure testified that Mr. Rovenolt told him after he fell that there was something black on the floor.  (Doc. No. 26 ¶ 14; Doc. No. 31 ¶ 14.)  Plaintiff McClure admitted that he did not see any black substance in the piece of the napkin, towel, or paper that Mr. Rovenolt used to wipe the floor.  (Doc. No. 26 ¶ 15; Doc. No. 31 ¶ 15.)

Plaintiff McClure does not have any information or facts showing how long the alleged slippery substance was on the floor in the area where he fell prior to the accident or how long the area was slippery.  (Doc. No. 26 ¶ 16; Doc. No. 31 ¶ 16.)  Plaintiff McClure admitted that he "wouldn't know" if the area where he fell was slippery at the time of his fall.  (Doc. No. 26 ¶ 17; Doc. No. 31 ¶ 17.)  According to Plaintiff McClure's AFC Urgent Care Cleveland Record from the day after the accident, October 19, 2019, Plaintiff McClure advised a doctor that he slipped

---

[2]  Although Plaintiff McClure does not expressly deny Defendant's statement, his assertion that he only cannot identify the particular substance that caused him to fall, coupled with his assertion that Mr. Rovenolt identified a foreign substance on Defendant's premises after he fell, calls into question the essence of Defendant's statement.  Accordingly, Defendant's statement of material fact is deemed denied under Local Rule 56.1.

on the floor at Love's but "isn't sure how he fell." (Doc. No. 26 ¶ 18; Doc. No. 31 ¶ 18.)

Plaintiff McClure replied "I don't know" to the question asking if he has any knowledge or facts

showing that Love's was aware of a slippery surface in the area where his accident occurred.

(Doc. No. 26 ¶ 19; Doc. No. 31 ¶ 19.)  Plaintiff McClure replied "I don't know" to the question

asking if he has any knowledge or facts showing that Love's was aware of any liquid on the floor

at any point in time prior to the accident.  (Doc. No. 26 ¶ 20; Doc. No. 31 ¶ 20.)  Plaintiff

McClure does not know how long or have any information as to how long liquid was allegedly

on the floor prior to the accident.  (Doc. No. 26 ¶ 21; Doc. No. 31 ¶ 21.)

Plaintiffs initiated the above-captioned action in a Pennsylvania state court on January

29, 2021, asserting two tort claims: negligence, resulting in injuries to Plaintiff McClure (Count

I), and loss of consortium, resulting in injuries to Plaintiff Swint (Count II).  (Doc. Nos. 1 ¶ 1; 1-

2 at 7-10.)  Defendant removed this action to federal court on February 24, 2021, invoking this

Court's diversity jurisdiction under 28 U.S.C. § 1441.  (Doc. No. 1.)  Defendant filed an answer

to Plaintiffs' complaint on April 12, 2021 (Doc. No. 5), and a case management conference was

held on June 15, 2021.  Following this conference, the parties were referred to mediation (Doc.

No. 11), but a settlement was not reached (Doc. No. 27).  On August 19, 2021, the Court held a

status conference with the parties and set a December 31, 2021 close of fact discovery date.

(Doc. No. 14.)  The Court extended the close of fact discovery date three times: first to March 1,

2022 (Doc. No. 17), then to May 16, 2022 (Doc. No. 20), and finally to June 30, 2022 (Doc. No.

22).

Defendant filed the pending motion for summary judgment on September 20, 2022 (Doc.

No. 25), with a statement of material facts (Doc. No. 26).  Defendant filed a brief in support of

its motion on October 3, 2022.  (Doc. No. 30.)  On October 13, 2022, Plaintiffs filed a brief in

opposition to Defendant's motion (Doc. No. 32) and a counter-statement of material facts (Doc. No. 31).  Defendant filed a reply brief in further support of its motion on October 26, 2022. (Doc. No. 33.)  Having been fully briefed, Defendant's motion is ripe for disposition.

## II.   LEGAL STANDARD

Rule 56(a) of the Federal Rules of Civil Procedure provides that summary judgment is warranted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  See Fed. R. Civ. P. 56(a).  A factual dispute is material if it might affect the outcome of the suit under the applicable law, and it is genuine only if there is a sufficient evidentiary basis that would allow a reasonable factfinder to return a verdict for the non-moving party.  See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248-49 (1986).  At summary judgment, the inquiry is whether the evidence presents a sufficient disagreement to require submission to the jury or whether it is so one-sided that one party must prevail as a matter of law.  See id. at 251-52.  In making this determination, the Court must "consider all evidence in the light most favorable to the party opposing the motion."  See A.W. v. Jersey City Pub. Schs., 486 F.3d 791, 794 (3d Cir. 2007).

The moving party has the initial burden of identifying evidence that it believes shows an absence of a genuine issue of material fact.  See Conoshenti v. Pub. Serv. Elec. & Gas Co., 364 F.3d 135, 145-46 (3d Cir. 2004).  Where the moving party does not bear the burden of proof on a particular issue at trial, it may simply "poin[t] out to the district court [] that there is an absence of evidence to support the nonmoving party's case," and need not "produce evidence showing the absence of a genuine issue of material fact."  See Celotex Corp. v. Catrett, 477 U.S. 317, 325 (1986).  Once the moving party has shown that there is an absence of evidence to support the non-moving party's claims, "the non-moving party must rebut the motion with facts in the record

and cannot rest solely on assertions made in the pleadings, legal memoranda, or oral argument." See Berckeley Inv. Grp. Ltd. v. Colkitt, 455 F.3d 195, 201 (3d Cir. 2006); accord Celotex, 477 U.S. at 324.  If the non-moving party "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden at trial," summary judgment is warranted.  See Celotex, 477 U.S. at 322.  With respect to the sufficiency of the evidence that the non-moving party must provide, a court should grant a motion for summary judgment when the non-movant's evidence is merely colorable, conclusory, or speculative.  See Anderson, 477 U.S. at 249-50.  There must be more than a scintilla of evidence supporting the non-moving party and more than some metaphysical doubt as to the material facts.  See id. at 252; see also Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986).  Furthermore, a party may not defeat a motion for summary judgment with evidence that would not be admissible at trial.  See Pamintuan v. Nanticoke Mem'l Hosp., 192 F.3d 378, 387 (3d Cir. 1999).

## III.    DISCUSSION

Under Pennsylvania law,[3] a plaintiff asserting a negligence claim must establish: (1) a duty requiring the defendant to conform to a certain standard of conduct; (2) failure by the defendant to observe that standard; (3) an injury which is proximately and actually caused by the defendant's failure to observe that standard; and (4) damages.  See Brown v. Philadelphia Coll. of Osteopathic Med., 760 A.2d 863, 868 (Pa. Super. 2000).  Defendant argues that it is entitled to summary judgment as to Plaintiff McClure's negligence claim because he cannot identify the cause of his fall and because he has failed to adduce sufficient evidence to establish that it owed

---

[3]  The parties agree that the substantive state law of Pennsylvania applies to the above-captioned action.

him a duty as a matter of Pennsylvania law.  (Doc. No. 30 at 8, 12.)  The Court first addresses

whether Defendant owed a duty to McClure as a matter Pennsylvania law.

### A.      Applicable Legal Standard

The duty that a defendant owes to a plaintiff depends on the relationship of the parties.

See Alumni Ass'n, Delta Zeta Zeta of Lamdi Chi Alpha Fraternity v. Sullivan, 535 A.2d 1095,

1098 (Pa. Super. 1987).  The parties agree that Defendant is a business owner and that Plaintiff

McClure is an invitee.  The Second Restatement of Torts describes the duty owed by a business

owner to an invitee under Pennsylvania law.  See Rodriguez v. Kravco Simon Co., 111 A.3d

1191, 1193 (Pa. Super. 2015) (quoting Restatement (Second) of Torts § 343 (1965)).  Under the

Second Restatement of Torts, a business owner owes a duty to warn invitees about hazardous

conditions about which it has actual or constructive notice.[4]  See Felix v. GMS, Zallie Holdings,

Inc., 827 F. Supp. 2d 430, 436 (E.D. Pa. 2011); Estate of Swift v. Ne. Hosp. of Phila., 690 A.2d

719, 723 (Pa. Super. 1997).

 "Actual notice is 'notice given directly to, or received personally by, a party,'" meaning

"the plaintiff must demonstrate that the defendant knew of the hazardous condition and not

merely that the defendant should have known of the condition."  See Watson v. Bos. Mkt. Corp.,

No. 17-cv-05648, 2019 WL 1359739, at *3 (E.D. Pa. Mar. 26, 2019) (quoting Torres v. Control

Bldg. Servs., No. 09-cv-00178, 2010 WL 571789, at *2-3 (E.D. Pa. Feb. 16, 2010)).  Actual

notice can be inferred "where the [hazardous] condition is one which the owner knows has

frequently recurred."  See Porro v. Century III Assocs., 846 A.2d 1282, 1286 (Pa. Super. 2004);

---

[4] A business owner also owes a duty to the invitee when it creates the dangerous circumstances resulting in the invitee's injury.  See Hendershot v. Walmart, Inc., No. 5:21-cv-02422, 2022 WL 2669298, at *2 (E.D. Pa. July 11, 2022) (collecting cases).  Plaintiff McClure, however, does not argue that Defendant created the circumstances resulting in his fall—nor is such an argument supported by the record.

see, e.g., Falcone v. Speedyway, No. 14-cv-02188, 2017 WL 220326, at *3 (E.D. Pa. Jan. 19, 2017) (denying the defendant's motion for summary judgment on actual notice grounds because (1) the defendant's employee testified that the hazardous condition resulting in the plaintiff's fall frequently recurred and (2) the plaintiff adduced evidence of safety precautions which gave rise to an inference that the defendant knew the hazardous condition frequently recurred).

Constructive notice, by contrast, can be inferred where the business owner should have known—but did not actually know—about the hazardous condition that resulted in the invitee's injury.  See Aiello v. Chester Downs, LLC, No. 2:20-cv-06032, 2021 WL 3022438, at *4, *6 (E.D. Pa. July 15, 2021).  "What will amount to constructive notice of a defective or dangerous condition existing upon a defendant's premises, necessarily varies under the circumstances of each case." Bremer v. W. W. Smith, Inc., 191 A. 395, 397 (Pa. Super. 1937).  Courts consider the following factors identified by the Pennsylvania Superior Court in Bremer v. W. W. Smith, Inc. ("Bremer factors") when making this determination: "the size and physical condition of the premises, the nature of the business conducted thereon, the number of persons using the premises and the frequency of such use, the nature of the defect and its location on the premises, its probable cause and the opportunity which defendant, as a reasonably prudent person, had to remedy it."  See id.  Although "[t]he evaluation of these factors" is normally "within the province of the jury," see Felix, 827 F. Supp. 2d at 443 (quoting Hagan v. Caldor Dep't Stores, Inc., No. 89-cv-07810, 1991 WL 8429, at *4 (E.D. Pa. Jan. 28, 1991)), a jury cannot infer constructive notice "[w]ithout any evidence that the [hazardous condition] was observable for any significant period of time prior to the accident," see Tameru v. W-Franklin, L.P., 350 F. App'x 737, 740 (3d Cir. 2009) (unpublished) (citing Saldana v. Kmart Corp., 260 F.3d 228, 232 (3d Cir. 2001); see also Saldana, 260 F.3d at 232 (discussing the requirements for constructive

notice under § 343 of the Second Restatement of Torts and explaining that a jury may "only . . . begin to consider whether under the circumstances the amount of time indicated by the evidence establishes constructive notice" if a plaintiff points "to evidence . . . [indicating that the hazardous condition resulting in his fall was on the] floor for some minimum amount of time before the accident").  This is so because "[w]here the duration of time . . . is very short, the landowner would not be able to discover the hazard 'even in the exercise of reasonable care.'"  See Pickett v. Target Corp., No. 3:20-cv-00237, 2021 WL 5163220, at *4 (M.D. Pa. Nov. 5, 2021); see also Felix, 827 F. Supp. 2d at 437 (quoting Restatement (Second) of Torts § 343 (1965)) (explaining that "if a hazard only existed for a very short period of time before causing any injury, then the possessor of the land, even 'by the exercise of reasonable care,' would not discover the hazard, and thus would owe no duty to protect invitees from such a hazard").  Accordingly, a plaintiff's failure to establish how long the dangerous condition existed on a defendant's premises is "commonly . . . dispositive" under Pennsylvania law.  See Larkin v. Super Fresh Food Markets, Inc., 291 F. App'x 483, 485 (3d Cir. 2008) (unpublished) (collecting cases).

### B.      Arguments of the Parties

Defendant argues that it is entitled to summary judgment because Plaintiff McClure cannot establish that it had actual or constructive notice of any dangerous or hazardous condition on its premises.  Plaintiff McClure, by contrast, argues that there is a genuine dispute of material fact as to these issues.  Plaintiff McClure also asserts a third argument as to why Defendant's motion should be denied: it failed to affirmatively maintain its premises.  These arguments are summarized below.

### 1.    Actual Notice

Defendant contends that Plaintiff McClure cannot establish actual notice because he

"fails to establish a material fact of a slippery . . . substance's frequency" on its premises.  (Doc.

No. 33 at 10.)  Plaintiff McClure disagrees, arguing he has presented sufficient evidence, <u>see</u>

<u>infra</u>, Section III.C.1, from which a reasonable jury could conclude that the slippery substance

that caused his fall was a frequently recurring condition.  (Doc. No. 31 at 12.)  He also argues

that this case is analogous to <u>Falcone v. Speedyway</u>, an unpublished decision from the Eastern

District of Pennsylvania denying a motion for summary judgment on actual notice grounds.  <u>See</u>

2017 WL 220326, at *3.

### 2.    Constructive Notice

Defendant argues that Plaintiff McClure cannot "show a genuine dispute of material fact"

on the issue of constructive notice because he has not offered any evidence that establishes how

long the slippery condition resulting in his fall was present on its premises.  (<u>Id.</u> at 11.)  Plaintiff

McClure disagrees, contending that Defendant should have known about the slippery condition

on its premises because it is undisputed that the area where the foreign substance was found

"wasn't inspected for at least 4 hours and 21 minutes prior to the incident."  (Doc. No. 32 at 13.)

Plaintiff McClure also analogizes to <u>Krick v. Giant Food Stores, LLC</u>, No. 16-cv-01734, 2018

WL 1518804 (E.D. Pa. Mar. 28, 2018), in which a district court concluded that there was a

genuine dispute of material fact on the issue of constructive notice based on its evaluation of the

<u>Bremer</u> factors.  (<u>Id.</u> at 12-13.)

### 3.    Defendant's Duty to Maintain its Premises

Plaintiff McClure also asserts an independent reason for denying Defendant's motion:

there is a genuine dispute of material fact "regarding whether Defendant made an affirmative

10

attempt to assess the condition of its premises." (Id. at 13-15.)  Specifically, Plaintiff McClure

argues that "video surveillance clearly demonstrates that [the location where Plaintiff fell] was

not inspected at any point between 12:00 p.m. and 4:21 p.m. when Mr. McClure fell" and that

"the law should not permit a property owner to turn a blind eye to potential hazards for an

unreasonable length of time and then get the benefit of a notice argument when invitees become

injured by a hazard that would have been identified if a reasonable attempt to ascertain the

condition of the premises been performed." (Id.)  Defendant responds that the cases cited by

Plaintiff McClure in support of this argument are inapplicable to the case at bar because they

involved adverse inferences drawn against the defendant due to the spoliation of evidence.  (Doc.

No. 33 at 11.)

     C.     **Analysis**

          1.     **Actual Notice**

     As discussed above, when the party moving for summary judgment does not bear the

burden of proving a particular issue at trial, it can show that there is no material dispute of fact

by "pointing out to the district court [] that there is an absence of evidence to support the

nonmoving party's case."  See Celotex, 477 U.S. at 325.  Plaintiff McClure, as an invitee, bears

the burden of proving actual notice at trial.  See Neve v. Insalaco's, 771 A.2d 786, 791 n.5 (Pa.

Super. 2001) (explaining that "an invitee can satisfy th[e] burden" of showing that a "proprietor

deviated from the duty of reasonable care" by "establishing . . . that the proprietor . . . had actual

notice of it").  Accordingly, Defendant's contention that Plaintiff McClure has failed to produce

any evidence indicating that the slippery substance that caused his fall was a frequently recurring

condition sufficiently "poin[ts] out" to this Court that there is no genuine issue for trial.  See

Celotex, 477 U.S. at 325.  With this in mind, the Court turns to whether Plaintiff McClure, the

non-moving party, has offered "specific facts to show that, to the contrary, a genuine issue of

material fact exists for trial."  See Fado v. Kimber Mfg., Inc., No. 11-cv-04772, 2016 WL

3912852, at *3 (D.N.J. July 18, 2016).  Specifically, the Court considers whether Plaintiff

McClure has adduced evidence to support his argument that the hazard that caused his fall was a

frequently recurring condition.

Plaintiff McClure argues that the following testimony shows that Defendant "knew

there was a frequent tendency for there to be slippery substances at the entrance to the store on

the area of exposed tile, particularly oil and diesel fuel":

- "Mr. Rovenolt testified that there was a concern that customers and employees could track diesel fuel or motor oil on the underneath of their shoes into the store [and that] there was probably a higher likelihood of oil on the ground outside of the entrance that [Plaintiff] used";

- "Another manager, Chris Brown, testified that in his experience, it is more likely that the diesel section of the store would have oil or greasy substances on the floor from the shoes and boots of commercial vehicle drivers as opposed to the gas portion of the store";

- "The manager of the tire shop, Donald Barkey, was asked whether it was common to find oil on the ground outside of the diesel entrance, and he testified, 'Sometimes. I won't say really so much oil as diesel fuel, and I know diesel fuel can be slick, but at the same time, you know, you get 30 trucks running through 1 lane during the day. Some guys overfill their tanks, and then it's dripping off their tanks, but . . . [i]t's not something that we would have to keep running out to keep, you know, power washing those areas'";

- "The cashier on duty at the diesel desk at the time of this incident, Taysha Hernandez, was asked whether it was more likely for oil or grease to be on the floor in the diesel area of the store and she testified, 'Yeah. Definitely.'"; and

- "Ms. Hernandez also recalled two or three incidents of employees slipping and falling directly inside the door the Mr. McClure entered before his fall due to water on the floor."

(Doc. No. 32 at 11-12.)[5]

---

[5]  Plaintiff McClure also points to testimony indicating that certain employees felt that more floor mats could have been used at the store to prevent potential slipping incidents and argues that, although Defendant "had a simple way to eliminate" slippery conditions on its premises "by extending its mat at the entrance or using more mats," it "decided not to."  (Id. at 12.)  While this

Contrary to Plaintiff McClure's contention, this testimony does not show that the slippery substance that caused his fall was a frequently recurring condition.[6]  At most, it provides relevant circumstantial evidence for whether Defendant could have known that a slippery substance might accumulate on its premises.  Evidence that a defendant could have known about a hazardous condition on its premises, however, is insufficient to establish actual notice.  See, e.g., Watson, 2019 WL 1359739, at *3 (explaining that an invitee cannot carry their burden of establishing actual notice by showing "merely that the defendant should have known of the condition" (emphasis added) (quoting Torres, 2010 WL 571789, at *2-3)); Prell v. Columbia Sussex Corp., No. 07-cv-02189, 2008 WL 4646099, at *5 (E.D. Pa. Oct. 20, 2008) (explaining that "[a]ctual notice exists where evidence shows that the defendant had direct knowledge of the condition" (emphasis added)).  More is needed—in particular, evidence showing that the hazardous condition recurs "so often . . . as to call for frequent notices to [Defendant]."  See Markman v. Fred P. Bell Stores Co., 132 A. 178, 180 (Pa. 1926).  Yet, none of the evidence on which Plaintiff McClure relies directly describes the frequency with which a slippery substance like fuel or oil accumulated on Defendant's premises—e.g., once a week, once a month, or once a year.[7]  Compare Falcone, 2017 WL 220326, at *3 (denying a motion for summary judgment

---

evidence is relevant to whether Defendant breached a duty of care, it is irrelevant to whether Defendant owed a duty to Plaintiff McClure.  See Felix, 827 F. Supp. 2d at 440 (explaining "[i]n order for Defendants to fail to exercise reasonable care with respect to a duty, Defendants must owe a duty in the first place").

[6]  If anything, Mr. Barkey's testimony that Defendant's employees did not "have to keep running out" and "power washing" fuel or oil from its premises shows that such slippery conditions were not a frequently recurring condition.  See, e.g., Miller, 2022 WL 541609, at *4 (explaining that the plaintiff failed to offer sufficient evidence to infer actual notice and finding relevant that "the only evidence regarding the likelihood of spills" in the area of the accident "is the testimony of [an employee], who stated that spills . . .  did not occur [there] regularly" (emphasis added)).

[7]  Although Ms. Hernandez testified that two or three employees previously slipped in the store (Doc. No. 32 at 3), her deposition makes clear that "most of the time it was just raining outside,

because, inter alia, the defendant's employee "testified she was aware that, over the years, there were recurring gasoline spills in the parking lot" at the rate of "a few times every month") with Hendershot, 2022 WL 2669298, at *3 (concluding that there was no actual notice because "there [wa]s no evidence . . . that the hazardous condition . . . [w]as one that [the defendant] knew frequently recurred"). Accordingly, the Court concludes that Plaintiff McClure has failed to create a genuine dispute of material fact as to the issue of actual notice.

In reaching this conclusion, the Court rejects Plaintiff McClure's argument that this case is analogous to Falcone v. Speedyway. See 2017 WL 220326, at *3. In Falcone, the plaintiff purportedly slipped and fell because of a fuel spill. See id. The Falcone court denied the defendant's motion for summary judgment on actual notice grounds because of evidence indicating that it "undoubtedly had some knowledge of the danger and frequency of fuel spills." See id. To this end, the Falcone court found relevant an employee's testimony that she was aware that "there were recurring gasoline spills in the parking lot" at the rate of "a few times every month" as well as a safety checklist which instructed employees that "there should be '[n]o gasoline or oil spills'" in the area where the plaintiff fell. See id. The safety checklist further required "employees to check a box labeled either 'acceptable' or 'unacceptable,' depending on the presence—or lack thereof—of gas or oil spills." See id.

No comparable evidence has been adduced in this case. First, as discussed above, Plaintiff McClure does not offer any testimony describing the frequency with which the hazardous condition resulting on Defendant's premises recurred. Second, the evidence in Falcone suggested that the defendant took specific precautions to prevent the very hazard that

---

and [employees] would try to rush in, and they would slip and fall" (Doc. No. 31-5 at 12). Plaintiff McClure admits that it was not raining on the day of his accident. (Doc. No. 26 ¶ 2.)

caused the plaintiff's injury.  The evidence here, however, at best reflects general precautions

taken by Defendant to prevent general hazards, such as requiring its employees to vacuum and

sweep the floor and placing floor mats inside the store to absorb liquid.  (Doc. No. 32 at 3-4, 12.)

Such precautions, which are neither unique to Defendant's business nor reflect corrective

measures to prevent the specific danger that caused Plaintiff McClure's injury, do not show that

Defendant actually knew that the slippery substance identified by Mr. Rovenolt was a frequently

recurring condition.  See, e.g., Miller, 2022 WL 541609, at *2, *4 (explaining that the

defendant's cleaning checklist, which "provided guidelines as to which areas needed to be

cleaned and when," did not reflect the defendant's awareness of a frequently recurring condition

because the "checklist d[id] not contain any reference to checking for spills" in the area where

the plaintiff fell).  For these reasons, the Court concludes that Defendant is entitled to judgment

as a matter of law on the issue of actual notice.

### 2.      Constructive Notice

Because Defendant does not bear the burden at trial of proving constructive notice, see

Neve, 771 A.2d at 791, its argument that Plaintiff McClure has failed to offer evidence

establishing constructive notice sufficiently "poin[ts] out" to this Court "that there is an absence

of evidence to support the nonmoving party's case," see Celotex, 477 U.S. at 325.  Accordingly,

the Court turns to whether Plaintiff McClure has offered "specific facts to show that, to the

contrary, a genuine issue of material fact exists for trial."  See Fado, 2016 WL 3912852, at *3.

To meet this burden, Plaintiff McClure offers some evidence in support of the Bremer

factors and argues that Defendant did not sweep the floor during a 4 hour and 21 minute period

before he entered the store.  (Doc. No. 32 at 12-13.)  However, he fails to adduce evidence that

describes how long the slippery substance that caused his fall was present on Defendant's

premises.  Nor can he—conceding that he does not have any information or facts showing (1)

how long a liquid was allegedly on the floor prior to the accident, (2) whether the alleged slippery substance was on the floor in the area where he fell prior to the accident, and (3) how long that area was slippery.  (Doc. No. 26 ¶ 16, 21.)  Without this evidence, a jury would have to speculate about whether the hazardous condition occurred "10 minutes, 10 hours or 10 days prior to [his] accident."  See Lanni v. Pa. R.R. Co., 88 A.2d 887, 889 (Pa. 1952).  Accordingly, regardless of Plaintiff McClure's contention that Defendant failed to inspect its premises despite the possibility of slippery conditions accumulating, Defendant is entitled to judgment as a matter of law on the issue of constructive notice.  See, e.g., Rodgers, 720 F. App'x at 677 (unpublished) (explaining that a store's failure to sweep for two hours and twenty-six minutes only "caps the amount of time the puddle [resulting in the plaintiff's fall] could have existed" but "does not itself show [that the puddle] existed for a length of time sufficient to give the store actual or constructive notice" (emphasis added)); Smith v. Barnes & Noble Booksellers, No. 3:08-cv-01974, 2010 WL 2195942, at *4-5 (M.D. Pa. May 27, 2010) (granting the defendant's motion for summary judgment, even though the plaintiff produced evidence that the "defendant did not inspect the bathroom regularly to insure that conditions there were safe, despite the possibility that a dangerous situation could arise," due to the plaintiff's failure to offer any direct or circumstantial evidence indicating how long the slippery substance that caused his fall was present); Gales v. United States, 617 F. Supp. 42, 45 (W.D. Pa. 1985) (granting the defendant's motion for summary judgment "because there [we]re no facts showing that" the hazardous condition "was on the floor for a sufficient time period such that constructive notice of the same [could] be reasonably inferred").

### 3.    Defendant's Duty to Maintain its Premises

Plaintiff McClure's argument that there is a genuine dispute of material fact "regarding

whether Defendant made an affirmative attempt to assess the condition of its premises" because of Defendant's failure to inspect its premises between 12:00 p.m. and 4:21 p.m. (id. at 13) relies on Rodriguez v. Kravco Simon Co., 111 A.3d 1191, 1196 (Pa. Super. 2015) and Falcone, 2017 WL 220326, at *6.  The Court rejects this argument because (1) Rodriguez and Falcone are distinguishable from the case at bar and (2) Plaintiff McClure cannot show that Defendant could have prevented his fall by inspecting its premises between 12:00 p.m. and 4:21 p.m.

First, unlike the present case, Rodriguez and Falcone involved issues about the spoliation of evidence.  Specifically, the Pennsylvania Superior Court's decision in Rodriguez—on which Falcone's analysis is based, see Falcone, 2017 WL 220326, at *6 & *6 n.4—concluded that there was an "open question about spoliation" because the defendants failed to produce records showing whether employees complied with internal cleaning schedules.  See Rodriguez, 111 A.3d at 1196.  The Rodriguez court held that the potential spoliation issue meant that there was an "open possibility that the [defendants'] employees failed to check the floors as scheduled prior to [the plaintiff's] fall," meaning the defendants were not entitled to judgment as a matter of law.  See id.  Here, by contrast, Plaintiff does not advance a spoliation argument.  On the contrary, he concedes that "Love's has produced task lists which indicate that the entrance was inspected at some point between 8:00 a.m. and 4:00 p.m," consistent with its cleaning schedule. (Doc. No. 32 at 14.)  And though Plaintiff McClure contends that "the video surveillance clearly demonstrates that [the store] was not inspected at any point between 12:00 p.m. and 4:21 p.m. when Mr. McClure fell" (id.), he does not present any grounds from which to conclude that Defendant failed to inspect its premises between 8:00 a.m. and 12:00 p.m.  Accordingly, there is no "open possibility that [Defendant's] employees failed to check the floors as scheduled" in this case.  See Rodriguez, 111 A.3d at 1196.

Second, the Court observes that a defendant's duty to maintain its premises stems from Comment b to § 343 of the Second Restatement of Torts.  See Restatement (Second) of Torts § 343, cmt. b (1965) (explaining that "to the invitee the possessor owes . . . the additional duty to exercise reasonable affirmative care to see that the premises are safe for the reception of the visitor, or at least to ascertain the condition of the land . . .").  § 343, however, has been interpreted to require a plaintiff to establish the duration of the hazard on the defendant's premises because, "if a hazard only existed for a very short period of time before causing any injury, then the possessor of the land, even 'by the exercise of reasonable care,' would not discover the hazard."  See Felix, 827 F. Supp. 2d at 437 (citing Restatement (Second) of Torts § 343 (1965) (emphasis added)).  Plaintiff McClure, as already discussed, has not produced any evidence regarding the duration of the dangerous condition on Defendant's premises. Accordingly, a jury would have no basis from which to conclude that Defendant could have prevented Plaintiff McClure's injury by sweeping its premises during 12:00 p.m. and 4:21 p.m. For these reasons, the Court concludes that Plaintiff McClure has failed to create a genuine dispute of material fact based on this issue.

In reaching this conclusion, the Court recognizes that the plaintiff in Rodriguez survived the defendants' motion for summary judgment—despite failing to present evidence about the duration of the hazardous condition that caused his fall—based on the issue of whether the defendants affirmatively maintained the store's premises.  See Rodriguez, 111 A.3d at 1194, 1196.  But as noted above, the Rodriguez court denied the defendants' motion on affirmative-duty grounds because there was a dispute about the possible spoliation of evidence—an issue absent from the present case.  See also Crawford v. Grocery Outlet Bargain Mkt., 283 A.3d 384 (Pa. Super. 2022) (unpublished table decision) (explaining that "[i]n Rodriguez, a panel of this

Court held that an open issue of spoliation, which was based on the absence of a maintenance log for the date of the plaintiff's fall, precluded summary judgment in favor of the defendant because the plaintiff presented evidence that housekeeping contractors were responsible for sweeping and spot mopping the floors on an hourly basis").  Moreover, to the extent Rodriguez indicates that a defendant owes a duty to a plaintiff who is injured because of the defendant's failure to comply with its own cleaning schedules, see id.; Rodriguez, 111 A.3d at 1196 (explaining that "with the open possibility that . . . employees failed to check the floors as scheduled prior to [the plaintiff's] fall, it is not clear that [the defendants'] are entitled to judgment as a matter of law" (emphasis added)), Plaintiff McClure has not presented any evidence that Defendant's employees failed to inspect the store, as scheduled, between 8:00 a.m. and 4:00 p.m.  He only argues that they failed to clean the store between 12:00 p.m. and 4:21 p.m.—functionally challenging the adequacy of Defendant's protocols.  (Doc. No. 32 at 14.)  Because the "adequacy of any monitoring policy is only relevant after" a duty has been established, see Miller, 2022 WL 541609, at *5, the Court rejects Plaintiff's argument that Defendant's failure to affirmatively maintain its premises creates an issue for trial.

As Plaintiff McClure has failed to adduce sufficient evidence to establish that Defendant owed him a duty as a matter of Pennsylvania law, the Court need not address Defendant's argument that Plaintiff McClure cannot identify the cause of his fall.

## IV.    CONCLUSION

For the foregoing reasons, the Court will grant Defendant's motion for summary judgment as to Plaintiff McClure's Count I negligence claim.  Because Plaintiff McClure's negligence claim fails as a matter of law, the Court will also dismiss Plaintiff Swint's Count II loss of consortium claim, which "is derivative of, and thus rises and falls with, [her] injured spouse's underlying tort claim."  See Bixler v. Lamendola, No. 3:20-cv-01819, 2022 WL

2441567, at *5 (M.D. Pa. July 5, 2022); see, e.g., Pusey v. Becton Dickinson & Co., 794 F. Supp. 2d 551, 566 (E.D. Pa. 2011) (noting that "because we grant summary judgment with respect to plaintiffs' primary claims, we will also dismiss . . .  [plaintiff] Donald's [derivative] loss of consortium [claim]"); see also Bushman v. Halm, 798 F.2d 651, 656 (3d Cir. 1986) (explaining that because a loss of consortium claim was "wholly derivative from the underlying negligence cause of action, it was necessarily dismissed with the grant of summary judgment" (citing Murray v. Commercial Union Ins. Co., 782 F.2d 432, 437-38 (3d Cir.1986))).